IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TOMAYDO-TOMAHHDO LLC | ) | CASE NO.: |
| 2 Bratenahl Place # 1 F | ) | |
| Bratenahl, Ohio 44108 | ) | JUDGE |
| | ) | |
| and | ) | |
| | ) | |
| KETCHUP TO US, LLC | ) | |
| 2 Bratenahl Place # 1 F | ) | |
| Bratenahl, Ohio 44108 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TOMAYDO-TOMAHHDO EXPRESS, | ) | COMPLAINT FOR COPYRIGHT |
| LLC | ) | INFRINGEMENT AND SUPPLEMENTAL |
| 2 Bratenahl Place #l F | ) | CLAIMS |
| Bratenahl, Ohio 44108 | ) | |
| | ) | (Jury Demand Endorsed Hereon) |
| and | ) | |
| | ) | |
| MISE-EN-PLACE, INC. | ) | |
| 2 Bratenahl Place #l F | ) | |
| Bratenahl, Ohio 44108 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROSEMARIE I. CARROLL | ) | |
| 2 Bratenahl Place #l F | ) | |
| Bratenahl, Ohio 44108 | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGE VOZARY | ) | |
| 15316 Clifton Boulevard | ) | |
| Lakewood, Ohio 44107 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| CLEAN PLATE, lNC. d/b/a | ) | |
| CATEROLOGY | ) | |
| c/o George Vozary | ) | |

1

Statutory Agent                        )
15316 Clifton Boulevard                )
Lakewood, Ohio 44107                   )
                                       )
            and                        )
                                       )
LARRY MOORE                            )
154 Sundew Lane                        )
Chagrin Falls, Ohio 44022-4197         )
                                       )
            Also serve at:             )
                                       )
1628 Pontiac Street                    )
Cleveland, Ohio 44112                  )
                                       )
            Defendants.                )

Plaintiffs, Tomaydo-Tomahhdo LLC, Ketchup to Us, LLC, Tomaydo-Tomahhdo Express, LLC, Mise-En-Place, Inc. and Rosemarie I. Carroll (collectively, the "Plaintiffs"), for their Complaint against Defendants, George Vozary and Clean Plate, Inc. d/b/a Caterology and Larry Moore (collectively, the "Defendants"), state as follows:

## PARTIES

1.      Plaintiff, Tomaydo-Tomahhdo LLC ("Tomaydo"), is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Cleveland, Ohio.

2.      Plaintiff, Ketchup To Us, LLC ("Beachwood Tomaydo"), is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Beachwood, Ohio.

3.      Plaintiff, Tomaydo-Tomahhdo Express, LLC ("Downtown Tomaydo"), is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Cleveland, Ohio.

4.      Plaintiff, Mise-En-Place, Inc., ("Mise-En-Place"), is a corporation organized under the laws of the State of Ohio, with its principal place of business in Cleveland, Ohio.

5.      Plaintiff, Rosemarie I. Carroll ("Rose") is an individual who resides in Bratenahl, Cuyahoga County, Ohio.

6.      Defendant George Vozary ("Vozary"), is an individual residing in Cuyahoga County, Ohio and is a former employee of Plaintiffs and, upon information and belief, the owner of Defendant Clean Plate, Inc. d/b/a Caterology.

7.      Upon information and belief, Defendant Clean Plate, Inc. d/b/a Caterology ("Caterology"), is a corporation organized under the laws of the State of Ohio, with its principal place of business in Lakewood, Ohio.

8.      Defendant, Larry Moore ("Moore"), is an individual residing in Cuyahoga County, Ohio and, upon information and belief, is an owner, shareholder and/or otherwise affiliated or has an interest in Defendant Caterology.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over this action arising under 28 U.S.C. §§ 1331 and the 17 USC § 101 et seq., 28 USC § 1331 and 1338 for copyright infringement and unfair competition. Federal jurisdiction exists over claims asserted herein that are not within the Court's original jurisdiction under this court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as those claims form part of the same case or controversy under Article III of the United States Constitution as the federal cause of action.

10.      Venue is appropriate in this district under 28 U.S.C. §§ 1391(b)(1) and (2), as Defendants are residents of Cuyahoga County, Ohio and the acts that give rise to Plaintiffs' claims for relief occurred, and continue to occur, in Cuyahoga County, Ohio.

## FACTUAL BACKGROUND

11.     Plaintiff Tomaydo is the owner and copyright claimant of a copyrighted text entitled "Tomaydo Tomahhdo Recipe Book," United States Copyright Office Registration Number TXu 001885766 ("Copyright").   Plaintiff Tomaydo has licensed and/or authorized all other Plaintiffs to use this Copyright.

12.     Plaintiffs, Beachwood Tomaydo and Downtown Tomaydo, operate a restaurant, which focuses heavily on catering in the greater Cleveland area known as "Tomaydo-Tomahhdo." Tomaydo-Tomahhdo currently operates two locations - one in Beachwood, Ohio and the other in downtown Cleveland, Ohio.  Both locations offer the same food and dining services, including a catering service.  Likewise, Plaintiff Mise-En-Place operates a food service facility in Cleveland, known as Captain Tony's Downtown Pizza, to which Defendant Vozary was, at relevant times herein, employed.

13.     A primary focus of Plaintiffs Beachwood Tomaydo and Downtown Tomaydo's business is "drop-off" catering to the neighboring businesses that operate in the geographic areas surrounding their respective Beachwood and Cleveland locations.

14.     In the operation of their respective businesses, and separate from the Copyright, Plaintiffs have developed certain trade secrets about their business, including but not limited to, their recipes and picture-builds, food preparation and training techniques, financial information, marketing strategies, business model, customer lists and recipes (collectively "Trade Secrets").

15.     Plaintiffs' Trade Secrets derive independent economic value from not being generally known to or readily ascertainable by their competitors in the restaurant/catering business or by the general public, who could obtain economic value and economic advantage from the disclosure or use of such confidential and protective knowledge and information.

4

16.    Because Plaintiffs' Trade Secrets are of substantial economic value, Plaintiffs have taken, and continue to take active steps to maintain the secrecy of such knowledge and information, including but not limited to, requiring certain employees to execute confidentiality and non-disclosure agreements, along with safeguarding such information with passcodes.

17.    Defendant Moore previously was an owner of Ketchup to Us, LLC, Tomaydo-Tomahhdo Express, LLC, and Mise-En-Place, Inc., and, therefore, had access to all of Plaintiffs' Trade Secrets.  In February, 2008, Moore sold all of his interests in the Plaintiff entities to Plaintiff Rose via a written Share Purchase Agreement.  A true and accurate copy of the Share Purchase Agreement is attached hereto and incorporated herein as Exhibit "A."  The Share Purchase Agreement states, among other things:

> Seller shall return to Buyer **on the Execution Date** all access keys of the Entities, all documentation in your possession relating to the pizza oven located at KTU, any and all current and updated documents, materials and information, including but not limited to, all originals and copies of graphic design files, videos, photographs taken by Seller or a party approved by him, menu files and development ideas, recipes (current and historical) and training tools (picture boards, build sheets, prep lists, master order guide), materials that describe the Tomaydo-Tomahhdo concept, its goals and/or strategies (collectively, the "Materials"), which are in Seller's possession and relate to the Entities.  These Materials are property of the Entities and thus may not be retained by Seller in any form.  Seller may not use, disclose, convey or reproduce these Materials.   All other materials, which consist of employee training manuals, management workbooks and corporate forms, may be retained by Seller.

> 9.12.   Attorney's Fees.  In the event of litigation to enforce this Agreement, the party prevailing shall be entitled to reasonable attorneys' fees and costs incurred therein.

18.    In 2004, Plaintiffs hired Vozary and he eventually became a Manager of Ketchup to Us, LLC, Tomaydo-Tomahhdo Express and LLC, Mise-En-Place, Inc..  Vozary, as a Manager, has access to the Trade Secrets.

19.     As part of his employment, Vozary executed a Confidentiality Agreement.  (the "Confidentiality Agreement").  A true and accurate copy of the Confidentiality Agreement is attached hereto and incorporated herein as Exhibit "B."

20.     The Confidentiality Agreement states, in pertinent part:

During your employment with any company or subsidiary of BB, Inc., (including, but not limited to Tomaydo-Tomahhdo (sic), Tomaydo-Tomahhdo Express, and Captain Tony's) you will be exposed to confidential information, including recipes, food preparation methods, marketing strategies, financial information and other trade secrets.  You are not to discuss or disclose this information, except as necessary to perform your job.  As a term of your employment you must acknowledge that the following items listed below are confidential and agree to not disclose this confidential information to any third party without the permission of Rosemarie I. Carroll, President and CEO.

## CONFIDENTIALITY AGREEMENT

I agree the following items are confidential and are subject to this confidentiality agreement:

- Recipes and trade secrets
- Food preparation information
- Training manuals
- Management modules
- Policies, procedures, and employee handbooks
- Design models & schematics
- Company financial information and marketing strategies
- Letters or other documents pertaining to company personnel
- Databases or documents containing customer information
- Any other information that has been identified or may be identified by the company or its agents as confidential, or which the I (sic) have reason to believe is being maintained in confidence

21.     By employing Vozary as a Manager, Plaintiffs placed with Vozary a high degree of trust, confidence, and reliance, and counted on Vozary to act in the best interest of Plaintiffs as one of its supervisory employees.

22.     Upon information and belief, at least as early late 2009, Vozary began communicating with Defendant Moore.  Upon information and belief, Vozary's communications,

including telephone conversations, with Moore predominantly, if not entirely, pertained to the formation of a catering business that would directly compete with Plaintiffs. These communications occurred while Vozary was on company time working for Plaintiffs.

23.    On or about November 30, 2010, Vozary filed the Articles of Incorporation for Clean Plate, Inc. with the Ohio Secretary of State.

24.    In or around mid-March, 2011, Vozary telephoned Plaintiffs' owner and told her he was leaving Plaintiffs' employment and going to work for another restaurant. At that time, Vozary refused to disclose to Plaintiffs' owner his next employer. On or about March 25, 2011, Vozary left his employment with Plaintiffs.

25.    In the meantime, however, beginning mid-2010 and through the early months of 2011 and, of course almost daily in March, 2011, Vozary and Moore communicated, including via telephone, frequently and consistently. Upon information and belief, Vozary's conversations with Moore continued to predominantly, if not entirely, pertain to the formation of a catering business that would directly and unfairly compete with Plaintiffs' business via conversion of Plaintiffs' confidential and, proprietary information and conversion of the Trade Secrets.

26.    Vozary's telephone conversations with Moore occurred during Vozary's work hours, when he was supposed to be actively engaged as a Manager and, of course, occurred while Vozary utilized Plaintiffs' cell phone for which Plaintiffs paid. At all times relevant herein, Plaintiffs paid Vozary employment wages and other costs throughout his entire period of employment, up to and including his final paycheck on April 1, 2011.

27.    According to the Ohio Secretary of State's information, Vozary first used the trade name Caterology for his company Clean Plate, Inc. on May 1, 2011.

7

28. On or about May 27, 2011, Vozary, on behalf of Clean Plate, Inc., registered the trade name "Caterology" with the Ohio Secretary of State.

29. Upon information and belief, Vozary and Moore created Caterology using the Trade Secrets of Plaintiffs.  Indeed, Caterology is a catering business operating in the greater Cleveland area, which has targeted, and continues to target, Plaintiffs' customer base.

30. Caterology's website - http://www.cater-ology.com/ - states, in pertinent part:

> Caterology is the newest adventure from restaurateurs Larry and Cindy Moore. They are bringing their expertise in the restaurant industry to the catering world to create a different kind of catering experience.  Specializing in "drop off" catering for business' and residential (sic), they hope to provide a (sic) easy to use service featuring the highest quality foods available in the Cleveland market.

31. Caterology was formed by Vozary, while he was an employee of Plaintiffs, and with Defendant Moore.

32. Although Caterology's catering facility is located in Willoughby, Ohio, it has been, and continues to be, targeting Plaintiffs' same customers and geographic territory including, but not limited to, Beachwood, Pepper Pike, Solon and Downtown Cleveland, Ohio regions.

33. Caterology's menu offerings infringe upon the Copyright, violate the Share Purchase Agreement and convert Plaintiffs' Trade Secrets.

34. Defendants have used, and are actively using, the Copyrighted materials and Plaintiffs' Trade Secrets for their own benefit and for the purpose of diverting those customers' business from Plaintiffs to Caterology.  Further, Vozary and/or his agents and representatives have personally entered Plaintiffs' stores in an effort to, among other things, interrogate Plaintiffs' current employees about business matters and such activity must cease immediately.  Further, as recently as February, 2013, Defendants and/or their agents and representatives have boasted to Plaintiffs' employees about opening new stores in the direct region currently and historically targeted by Plaintiffs.

8

## COUNT I
### (Copyright Infringement - 17 U.S.C. §501)

35.     Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 34 above.

36.     Plaintiff Tomaydo is the owner of the Copyright.  Plaintiff Tomaydo licensed all other Plaintiffs herein to use the Copyright to their own benefit.

36.     Since May 27, 2011, Defendants infringed upon the Copyright.

37.     Defendants infringed upon the Copyright, without authorization, license or privilege of any kind.

38.     Defendants knew their acts constituted copyright infringement and are liable for copyright infringement pursuant to 17 USC §501.

39.     As the direct and proximate result of Defendants' copyright infringement, Plaintiffs have suffered, and will continue to suffer monetary loss.  Plaintiffs are entitled to recover damages, including its losses and any and all profits Defendants have made as a result of the copyright infringement.  17 USC §504.  Alternatively, Plaintiffs are entitled to recover statutory damages per 17 USC §504(c).  Plaintiffs should be awarded its attorney's fees and costs of suit pursuant to 17 USC§ 505.

## COUNT II

### (Breach of Fiduciary Duty - against Defendant Vozary)

40.     Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 39 above.

41.     Vozary owed a duty of loyalty to Plaintiffs by virtue of his fiduciary relationship with Plaintiffs.

9

42.     Vozary breached his duty of loyalty by strategizing to form a business that directly competed with Plaintiffs while still employed with Plaintiffs, by performing some, if not the majority, of the acts necessary to form such competing business during his work hours, and by accessing and utilizing Plaintiffs' protected databases, thereby misappropriating Plaintiffs' trade secrets for use in direct competition with Plaintiffs.

43.     As a direct and proximate result of Vozary's breach of fiduciary duty, Plaintiffs have been damaged, in an amount of at least $25,000.00, including lost profits and other business losses, and will continue to be damaged in an amount to be proven at trial.

44.     Vozary's breach of duty was willful, malicious, and done in conscious disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages.

## COUNT III
### (Breach of Contract- against Defendant Vozary)

45.     Plaintiffs repeat and incorporate herein by reference the allegations contained in paragraphs 1 through 44 above.

46.     As consideration for the continuation of his employment, Vozary executed and agreed to the terms set forth in the Confidentiality Agreement.

47.     The Confidentiality Agreement is a valid and binding contract.

48.     Vozary breached the Confidentiality Agreement by, among other things, using and disclosing trade secrets of Plaintiffs that were, legally, and under the terms of the Confidentiality Agreement, protected and confidential.

49.     At all times relevant hereto, Plaintiffs fully performed their obligations to Vozary.

50.     As a result of Vozary's breach of the Confidentiality Agreement, Plaintiffs have been damaged in an amount of at least $25,000.00, including but not limited to lost profits,

disgorgement of Defendant's profits resulting therefrom and other business losses, and will continue to be damaged in an amount to be more fully determined at trial.

<u>COUNT IV</u>
**(Misappropriation of Trade Secrets - against Defendants)**

51.     Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs l through 50 above.

52.     Plaintiffs' customer lists, customer databases, financial databases, recipes and picture-builds, food preparation and training techniques, financial information, marketing strategies, business models and recipes all constitute "trade secrets," as that term is defined in R.C. 1333.61.

53.     Plaintiffs' Trade Secrets derive independent economic value from not being generally known to Plaintiffs' competitors and were the subject of efforts taken by Plaintiffs to maintain their secrecy.

54.     Defendants were well aware of the confidential and proprietary nature of Plaintiffs' Trade Secrets and of the duty not to use or disclose Plaintiffs' Trade Secrets for their own benefit or for the benefit of any other person or entity.

55.     Defendants, have willfully, wrongfully, and maliciously misappropriated Plaintiffs' Trade Secrets by using and disclosing Plaintiffs' customer database, financial database, customer list, business model, recipes and picture-builds, food preparation and training techniques, financial information, marketing strategies, and recipes in an effort to directly compete against Plaintiffs when Caterology was created and began operating.  Defendants conduct continues to occur and will continue to occur in the future.

56.     As a result of Defendants' misappropriation of Trade Secrets, Plaintiffs have been damaged in an amount of at least $25,000.00, including lost profits, other business losses and/or

11

wrongful revenues obtained by Defendants, and will continue to be damaged in an amount to be more fully proven at trial.

57. Defendants' misappropriation of Trade Secrets was willful, malicious, and done in conscious disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages.

## COUNT V
### (Unfair Competition - against Defendants)

58. Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 57 above.

59. By illegally accessing Plaintiffs' customer database and using Plaintiffs' customer lists and other Trade Secrets, Defendants have, and will continue to, unfairly and wrongfully target Plaintiffs' catering customers and, likewise, will continue to offer markedly similar catering products and services to Plaintiffs' current and prospective customers. Defendants are falsely misleading the public by passing off its catering services as the same as Plaintiffs' catering services.

60. As a result of Defendants' unfair competition, Plaintiffs have suffered damages in an amount of at least $25,000.00, including lost profits, other business losses and/or wrongful revenues obtained by Defendants as a result of their unlawful activity, and will continue to suffer damages in an amount to be proven at trial.

61. Defendants' unfair competition was willful, malicious, and done in conscious disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages.

## COUNT VI
### (Tortious Interference with Current and Prospective Business Relationships - against Defendants)

62. Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 61 above.

63.     At all times relevant herein, Defendants knew the identities of Plaintiffs' customers and had access to Plaintiffs' customer databases and other confidential business, proprietary and confidential information.

64.     Defendants intentionally induced or otherwise purposely caused Plaintiffs' customers and/or prospective customers to terminate their business relationship with Plaintiffs or to refrain from purchasing Plaintiffs' services to the benefit of Defendants and to the detriment of Plaintiffs.

65.     Defendants were without privilege to interfere with Plaintiffs' relationships with its customers and prospective customers.

66.     As a result of Defendants' interference with current and prospective business relationships, Plaintiffs have suffered damages in an amount of at least $25,000.00, including lost profits, other business losses and/or revenues wrongfully obtained by Defendants, and will continue to suffer damages in an amount to be determined at trial.

67.     Defendants' tortious interference was willful, malicious, and done in conscious disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages.

## COUNT VII
### (Civil Conspiracy- against Defendants)

68.     Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 67 above.

69.     Defendants Vozary, Caterology and Moore, along with other currently unknown co-conspirators, maliciously conspired to, among other things, misappropriate Plaintiffs' Trade Secrets to form a directly competing catering business in contravention of Ohio law and Vozary's duties as an employee and fiduciary and were without privilege to interfere with Plaintiffs' current or prospective economic or business relationships.

70.     The conspiracy injured Plaintiffs by, among other things, diverting substantial amounts of catering business from Plaintiffs, thereby stealing business from Plaintiffs by lining Defendants' pockets with money and revenue unlawfully gained form Plaintiffs' Trade Secrets.

71.     As a result of the civil conspiracy, Plaintiffs have suffered substantial monetary damages, which will be more fully determined at trial.

72.     Defendants' civil conspiracy was willful, malicious, and done in conscious disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages.

### COUNT VIII
### (Breach of Contract – Defendant Moore)

73.     Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 72 above.

74.     Plaintiff Rose and defendant Moore were party to the contract attached as Exhibit A.

75.     Defendant Moore breached this contract by retaining, using, disclosing, conveying, reproducing and/or converting Plaintiffs' Trade Secrets.

76.     As the direct and proximate result of Defendant Moore's breach of contract, Plaintiff Rose has been damaged in an amount in excess of twenty five thousand dollars ($25,000.00), including but not limited to lost profits, disgorgement of Defendant's profits resulting therefrom and other business losses, and will continue to be damaged in an amount to be more fully determined at trial.

**WHEREFORE,** Plaintiffs Tomaydo-Tomahhdo LLC, Tomaydo-Tomahhdo Express, LLC, Ketchup To Us, LLC, Mise-En-Place, Inc. and/or Rosemarie I. Carroll demand that they be awarded judgment as follows:

(1) On Count I, damages in the amount of at least $25,000.00 and to be more fully determined at trial, including losses and any and all profits Defendants have made as a result of the copyright infringement.  17 USC §504; statutory damages per 17 USC §504(c); and/or attorney's fees and costs of suit pursuant to 17 USC§ 505;

(2) On the claims asserted in Counts II - VIII of this Complaint, Plaintiffs be awarded damages in the amount of at least $25,000.00 and to be more fully determined at trial, which amount should include, but not be limited to, Plaintiffs' lost profits, other business losses and/or the amount of profits procured or obtained by Defendants through their wrongful and intentional behavior as alleged herein, together with interest, expenses, attorneys' fees, and punitive damages, and any other relief as this Court deems just and equitable.

Respectfully submitted,


//s// Daniel F. Lindner_____
Daniel F. Lindner (0063918)
The Lindner Law Firm LLC
2077 East 4th Street, Second Floor
Cleveland, Ohio 44115
(216) 737-8888, (216) 737-9999 Fax
Daniel@Justuslawyers.com

Attorney for the Plaintiffs


Jury Demand

Plaintiffs requests a trial by jury in the present matter.


//s// Daniel F. Lindner_____
Daniel F. Lindner (0063918)

Attorney for the Plaintiffs

15

## SHARE PURCHASE AGREEMENT

This Share Purchase Agreement (the "Agreement"), entered into as of this 25th day of July, 2007, is executed by and between ROSEMARIE I. CARROLL, (the "Buyer") and LARRY MOORE ("Seller") (collectively, the "Parties").

## WITNESSETH:

WHEREAS, Seller is the owner of 39,250 Class A Membership Interests ("Seller Interests") of Ketchup To Us, LLC, an Ohio limited liability company, ("KTU");

WHEREAS, Seller also owns fifty percent (50%) of each of Tomaydo-Tomahhdo Express, LLC, an Ohio limited liability company, ("Express"), Tomaydo-Tomahhdo, LLC, an Ohio limited liability company ("Tomaydo," together with KTU and Express "Tomaydo-Tomahhdo"), Mise-en-Place, Inc., an Ohio corporation, ("Captain Tony's Downtown Pizza"), and Back Burner, Inc., an Ohio Corporation ("Back Burner" and together with Captain Tony's Downtown Pizza and Tomaydo-Tomahhdo, the "Entities").

WHEREAS, Buyer desires to purchase and the Seller desires to sell to the Purchaser (1) the Seller Interests and (2) Seller's 50% ownership interest in each of the Entities ("Entity Interests"), upon and subject to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the covenants and agreements of the parties set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, with the intent to be legally bound, agree as follows:

Section 1.  **DEFINITIONS.**

    A.  "Capacities" shall mean Buyer's and/or Seller's responsibilities, tasks, duties and/or obligations while employed by the Entities up to and including the Execution Date (defined herein).

    B.  "2008 Fiscal Year" shall mean the 2008 calendar year beginning January 1, 2008 and ending on December 31, 2008.

Section 2.  **PURCHASE AND SALE.**

    2.1  Purchase and Sale of the Seller Interests and Equity Interests.  Upon execution of this Agreement, Buyer will purchase the Seller Interests and Equity Interest from Seller, and he will sell the Seller Interests and Equity Interests to the Buyer for the consideration set forth below in Section 2.2.

    2.2  Purchase Price for the Seller Interests and Equity Interests.  The Buyer, in consideration for the Seller Interests and Equity Interests, will pay Seller a total purchase price of Two Hundred Fifty Thousand Dollars ($250,000) via Buyer's Escrow Account at Park View Federal Bank ("Escrow Account") based on the following installment payments and conditions:

        (i)  A first installment payment issued to Seller in the amount of One Hundred Thousand Dollars ($100,000) ("First Installment") that Buyer's Escrow Agent, Scott B. Lepene, Esq., ("Escrow Agent") will wire from the Escrow Account to Seller's Bank Account no later than 48 hours after the execution of this Agreement, which occurred on February 12, 2008 at ____ (the "Execution Date");

        (ii)  A second installment payment payable to Seller in the amount of Fifty Thousand Dollars ($50,000) less the Monthly Payments, as described in Section 9.3 of this



THE OHIO LEGAL BLANK CO., INC.

PLAINTIFF'S EXHIBIT

A

CLEVELAND, OHIO  44102-1799

Agreement, wired by the Escrow Agent from Buyer's Escrow Account to Seller's Bank Account on or before April 1, 2009 ("Second Installment");

(iii)  A third installment payment payable to Seller in the amount of Fifty Thousand Dollars ($50,000) less the Monthly Payments, as described in Section 9.3 of this Agreement, wired by the Escrow Agent from Buyer's Escrow Account to Seller's Bank Account on or before April 1, 2010 ("Third Installment"); and

(iv)  A final installment payment payable to Seller in the amount of Fifty Thousand Dollars ($50,000) less the Monthly Payments, as described in Section 9.3 of this Agreement, wired by the Escrow Agent from Buyer's Escrow Account to Seller's Bank Account on or before April 1, 2011 ("Fourth Installment," together with the First Installment, the Second Installment and the Third Installment, the "Installment Payments").

2.3  <u>Repayment of Loan</u>.  Buyer shall repay Seller Fifteen Thousand Two Hundred Eighty-Nine Dollars ($15,289.00), the amount seller previously loaned to KTU (the "Loan,"), plus Three Hundred Sixty-Two Dollars And 44/100 Cents ($362.44), the amount the Entities owe Seller for expenses incurred pursuant to Seller's expense report, (the "Expense Payment," together with the Loan and the First Installment, the "Payment") no later than 48 hours after the Execution Date. Thus, Buyer shall make payable to Seller the total amount of One Hundred Fifteen Thousand Six Hundred and Fifty-One Dollars And 44/100 Cents ($115,651.44), and Buyer's Escrow Agent will wire the Payment from Buyer's Escrow Account to Seller's Bank Account no later than 48 hours after the Execution Date.

Section 3.  **CLOSING DATE.**  The Parties consummated this Agreement on January 2, 2008 (the "Closing Date"),

Section 4.  **REPRESENTATIONS AND WARRANTIES OF THE SELLER.**

4.1  <u>Title to the Seller Interests</u>.  Seller represents and warrants to Buyer that Seller is the rightful owner of the Seller Interests and the same are free and clear of all liens, mortgages, pledges, security interests, and other encumbrances except for those imposed by the Operating Agreement and applicable securities laws.

4.2  <u>Power and Authority</u>.  Seller has full power and authority to execute, deliver and perform his obligations under this Agreement and no further corporate action is necessary to make this Agreement valid and binding upon Seller.

4.3  <u>Approval and Consents</u>.  No approval or consent of any person, firm or other entity is required to be obtained by Seller for the authorization of this Agreement or the consummation by Seller of any requisite transactions contemplated by this Agreement.

4.4  <u>Release of Buyer and the Entities</u>.  Upon execution of the Agreement, Seller hereby releases Buyer and the Entities, their affiliates, predecessors, successors in interest, present, former or future directors, officers, owners, shareholders, partners, employees, attorneys, agents and other representatives of any of them, if any, whether in their individual or official capacities, from any and all claims, charges, demands, liabilities, obligations, promises, controversies, damages, interests, contracts, agreements, rights, actions and causes of action in law or in equity, whether known or unknown, which Seller may have against any of them arising out of Buyers' Capacities at the Entities.

2

**Section 5.**    **REPRESENTATIONS AND WARRANTIES OF THE BUYER.**

5.1    <u>Power and Authority</u>.  Buyer has full power and authority to execute, deliver and perform her obligations under this Agreement and no further corporate action is necessary to make this Agreement valid and binding upon Buyer.

5.2    <u>Approval and Consents</u>.  No approval or consent of any person, firm or other entity is required to be obtained by Buyer for the authorization of this Agreement or the consummation by Buyer of any requisite transactions contemplated by this Agreement.

5.3    <u>Release of Seller and the Entities</u>.  Upon execution of the Agreement, Buyer hereby releases Seller and his predecessors, shareholders, partners, employees, attorneys, agents and other representatives of any of them, if any, whether in their individual or official capacities, from any and all claims, charges, demands, liabilities, obligations, promises, controversies, damages, interests, contracts, agreements, rights, actions and causes of action in law or in equity, whether known or unknown, which Buyer may have against any of them arising out of Seller's Capacities at the Entities.

**Section 6.**    **REQUIREMENTS/COVENANTS/ACKNOWLEDGMENTS OF SELLER.**

6.1    <u>Buyer's Requests for Production of Documents and Things</u>.  Seller shall return to Buyer **on the Execution Date** all access keys of the Entities, all documentation in your possession relating to the pizza oven located at KTU, any and all current and updated documents, materials and information, including but not limited to, all originals and copies of graphic design files, videos, photographs taken by Seller or a party approved by him, menu files and development ideas, recipes (current and historical) and training tools (picture boards, build sheets, prep lists, master order guide), materials that describe the Tomaydo-Tomahhdo concept, its goals and/or strategies (collectively, the "Materials"), which are in Seller's possession and relate to the Entities.  These Materials are property of the Entities and thus may not be retained by Seller in any form.  Seller may not use, disclose, convey or reproduce these Materials.  All other materials, which consist of employee training manuals, management workbooks and corporate forms, may be retained by Seller.

6.2    <u>Covenant Not To Compete</u>.  Seller covenants that he will (1) provide Buyer with the exact location of Seller's restaurant that he intends to open in the 2008 Fiscal Year and an accurate description of the restaurant's concept; or (2) agree not to open a restaurant, store or eating facility in Woodmere, Beachwood, Pepper Pike, Solon or Downtown Cleveland, Ohio on or before July 31, 2008 because Tomaydo-Tomahhdo is in negotiations to open a location in Solon, Ohio in the 2008 Fiscal Year.

Seller covenants that on or before January 2, 2010, he will not and will not knowingly direct, on his behalf, his predecessors, agents, partners, employees, attorneys, agents and other representatives, without the express written consent of Buyer, to (1) enter any of the Entities, which includes current or future locations; (2) induce or attempt to influence any then-current employees or representatives of the Entities to enter into any employment or contract relationship with any other person or entity; or (3) induce or attempt to influence an individual or entity from terminating a relationship or contract with the Entities.

**Section 7.**    **COVENANTS OF BUYER**

7.1    <u>Release of Cash Collateral</u>.  Buyer warrants and agrees that she and the Entities will fulfill each of their respective obligations pursuant to a certain loan agreement with National City Bank

3

dated _____ (the "Loan Agreement").  Upon the satisfaction of the Loan Agreement, Buyer will arrange to have all documentation evidencing this satisfaction delivered to Seller and all of his collateral pledged in connection with this loan released in full.

7.2     Release from Obligations.  Upon execution of this Agreement, Buyer shall be solely responsible for all of the Entities' obligations, either known or unknown, including but not limited to, the Entities' loans (KTU, Express and Captain Tony's Downtown Pizza), vendor agreements (Sysco and US Foodservice), line of credit accounts (Back Burner and Captain Tony's Downtown Pizza), credit cards (all entities) and accounts payables (all entities).  Buyer warrants that no personal balances of Seller appear on any Entity credit card or line of credit account.  Buyer also warrants that Seller has been released in full from any personal guaranty with any company, including but not limited to, food service vendors, real estate companies or any other business Seller would have been required to sign personally for in the course of the Entities' ordinary business practices.

7.3     Full Payment for Balance Owed.  Buyer acknowledges that if she sells more than 55% of her interests of the Entities, the remaining monies owed to Seller shall immediately become due and payable.  Buyer shall provide Seller written notice prior to the sale of her interests.

7.4     Buyer's Covenant Not to Enter.  Buyer covenants that on or before January 2, 2010, she will not and will not knowingly direct, on her behalf, her predecessors, agents, partners, employees, attorneys, agents and other representatives, without the express written consent of Seller, to (1) enter any future store(s), restaurant(s) and/or location(s) ("New Store") for any purpose; (2) induce or attempt to influence any then-current employees or representatives of Seller to enter into any employment or contract relationship with any other person or entity; or (3) induce or attempt to influence an individual or entity from terminating a relationship or contract associated with Seller's New Store.

## Section 8.   EVENTS OF DEFAULT

8.1     Failure to make Installment Payments.  Buyer acknowledges that if she fails to make any of the Installment Payments to Seller within forty-five (45) days of its due date, the remaining amounts owed on the Installment Payments shall become immediately due and payable to Seller.

8.2     Failure to make Automobile Payments.  Buyer acknowledges that if the Entities fail to make one (1) monthly payment on the Automobile Leases (defined below) and/or New Automobile (defined below) within thirty (30) days of the payment due date, the remaining lease payments owed for a 12-month period for the respective vehicles shall become due and payable to Seller.  If the Entities fail to make a second monthly payment on the Automobile Leases and/or New Automobile within thirty (30) days of the payment due date, the remaining lease payments owed for the respective vehicles shall become due and payable to Seller.

8.3     Failure to make Insurance Payments.  Buyer acknowledges that if the Entities fail to make one (1) monthly insurance premium payment on the Automobile Leases (defined below) and/or New Automobile (defined below) within thirty (30) days of the payment due date, the remaining insurance premiums owed for a 12-month period for the respective vehicles shall become due and payable to Seller.  If the Entities fail to make a second monthly insurance premium payment on the Automobile Leases and/or New Automobile within thirty (30) days of the payment due date, the remaining premium payments owed for the respective vehicles shall become due and payable to Seller.

4

**Section 9.**    **MISCELLANEOUS**

9.1    <u>Assignment</u>.  Seller may not assign or delegate any of his rights or obligations under this Agreement to any person without the prior written consent of the Buyer.

9.2    <u>Fees for Service Providers</u>. Buyer shall pay for all fees associated with this Agreement. If Seller retains legal counsel or any other professional for the purposes of executing this Agreement, Seller will be responsible for payment of these services rendered.

9.3    <u>Lease Payments of Seller's Automobiles</u>. During the period of this Agreement, the Entities shall be responsible for the payments on Seller's current ACURA MDX ("MDX") and ACURA RDX ("RDX") automobile leases (collectively, the "Automobile Leases") and all automobile insurance associated with these leases ("Automobile Payments"). Buyer further acknowledges that Seller's Automobile Leases are in the name of Mise-en-Place, Inc. dba Captain Tony's Downtown Pizza and will remain this way for the life of the leases. Upon the execution of this Agreement, all insurance associated with these vehicles shall not be in any of the Entities' names and shall be recorded under Seller's name. Moreover, Buyer acknowledges that the Entities will be responsible for the payments of one (1) new automobile purchased by Seller (the "New Automobile") and all automobile insurance associated with this vehicle if (1) the lease term of one of the Automobile Leases ends during the Agreement; and (2) the monthly automobile insurance and automobile payments on the New Automobile ("New Automobile Payments," together with the Automobile Payments, the "Monthly Payments") are less expensive than or equal to either of the monthly Automobile Payments on the Automobile Leases. If Seller purchases the New Automobile, it shall be in the name of the Seller and all insurance associated with the New Automobile also shall be in the Seller's name. Upon the execution of the Agreement, Seller shall provide Buyer necessary payment information so that she can arrange for the Entities to make the monthly car payments and respective automobile insurance and life insurance payments. All payments that the Entities make on the Automobile Leases and New Automobile shall reduce the annual amounts in the respective Second, Third and Fourth Installment Payments.

9.4    <u>Business Plan Template and Corporate Financials and Personal Net Worth Statement</u>. Buyer provided Seller with a business plan template that is in the form of an Excel Workbook on or about January 1, 2008. Buyer will provide Seller a copy of the Entities' corporate financial statements on the Execution Date. Buyer also agrees that her accountants, Kelman & Moses, Inc., will provide Seller a year-end personal net worth statement on or before February 15th for each respective year that an Installment Payment is due.

9.5    <u>Binding Effect</u>. All covenants and agreements of the Parties contained herein shall be binding upon and inure to the benefit of the parties and their respective successors, permitted assigns, heirs, and personal representatives.

9.6    <u>Amendment</u>. This Agreement may only be amended or modified by a writing signed by all of the Parties hereto.

9.7    <u>Interpretation</u>. The provisions of this Agreement, and of each separate article and section, are severable, and if any one of more provisions are adjudged to be illegal or otherwise unenforceable, in whole or in part, the remaining provisions, and any unenforceable provision to the extent enforceable in any other jurisdiction, shall nevertheless be binding and enforceable.

9.8 <u>Notices</u>.  All notices, requests, demands, and other communications that are required or may be given pursuant to the terms of this Agreement shall be in writing and shall be deemed to have been duly given (i) when personally delivered or sent by facsimile transmission (the receipt of which confirmed in writing), (ii) one business day after being sent by a nationally or regionally recognized overnight courier service, or (iii) three business days after having been deposited in the United States mail, postage prepaid, addressed to the party or its permitted assignees, at the following address or at such other address as shall be given in writing by one party to the other party:

If to the Buyer: Rosemarie I. Carroll
2 Bratenhal Place Suite 1F
Bratenhal, Ohio 44108

If to Seller: Larry Moore
154 Sundew Lane
South Russell, Ohio 44022

9.9 <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but which together shall constitute one document.  Delivery by facsimile of an executed copy of this Agreement shall be deemed effective delivery and each facsimile shall be deemed effective and enforceable as if it were an original.

9.10 <u>Captions and Section Headings</u>.  Captions and section headings used herein are for convenience of reference purposes only and shall not be given any effect in the construction or interpretation of the Agreement.

9.11 <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio without reference to conflicts of law principles.  Any dispute arising under, or in connection with, this Agreement or the transaction contemplated hereby shall be tried and delegated exclusively in the state or federal courts located in Cuyahoga County, Ohio.  The aforementioned choice of venue is intended by the parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the parties with respect to, or arising out of, this Agreement in any other jurisdiction.  Each party hereto waives any right it may have to assert the doctrine of forum non-conveniens or similar doctrine or to object to venue with respect to any proceeding brought in accordance with this Section, and stipulates that the state and federal courts located in Cuyahoga County, Ohio shall have in personam jurisdiction and venue over each of them for the purpose of litigating any dispute, controversy, or proceeding arising of, or related to, this Agreement.

9.12 <u>Attorneys' Fees</u>.  In the event of litigation to enforce this Agreement, the party prevailing shall be entitled to reasonable attorneys' fees and costs incurred therein.

9.13 <u>Cooperation</u>.  Each party hereto agrees to cooperate in the effectuation of the Agreement, to execute and deliver any and all other documentation and instruments, and to take such additional action, as shall be reasonably necessary or appropriate for such intended purpose.

9.14 <u>Survival of Representations and Warranties</u>.  Notwithstanding the closing of the transactions contemplated by this Agreement, or any investigation made by or on behalf of any of the parties hereto, the representations and warranties contained in this Agreement shall survive the Closing.  All claims for breach of representations and warranties must be presented by the delivery of a notice in writing by the party claiming such a breach to the party claimed to have so breached.

6

IN WITNESS WHEREOF, the Parties have duly executed this Agreement on the date first set forth above.

**ROSEMARIE I. CARROLL  "Buyer"**

By: _____  2.12.2008

**LARRY MOORE "Seller"**

By: _____

7



# NEW HIRE PACKET



## CONFIDENTIALITY AGREEMENT

During your employment with any company or subsidiary of BB, Inc., (including, but not limited to Tomaydo-Tomahdo, Tomaydo-Tomahhdo Express, and Captain Tony's) you will be exposed to confidential information, including recipes, food preparation methods, marketing strategies, financial information and other trade secrets.  You are not to discuss or disclose this information, except as necessary to perform your job.  As a term of your employment you must acknowledge that the following items listed below are confidential and agree to not disclose this confidential information to any third party without the permission of Rosemarie I. Carroll, President and CEO.

## CONFIDENTIALITY AGREEMENT

I agree the following items are confidential and are subject to this confidentiality agreement:

- Recipes and trade secrets
- Food preparation information
- Training manuals
- Management modules
- Policies, procedures, and employee handbooks
- Design models & schematics
- Company financial information and marketing strategies
- Letters or other documents pertaining to company personnel
- Databases or documents containing customer information
- Any other information that has been identified or may be identified by the company or its agents as confidential, or which the I have reason to believe is being maintained in confidence

_____ (initial here)

I further agree not to disclose any information above and any other information that I have reason to believe is confidential to any third party without permission from Managing Partners, Larry Moore and Rose Carroll.

_____ (initial here)

I further acknowledge that failure to adhere to this confidentiality agreement may result in immediate termination and may result in civil liability and penalty under law.

_____ (initial here)

Should a question arise as to whether information you have gained access is confidential and subject to your agreement not to disclose contact the Managing Partners for clarification.



THE OHIO LEGAL BLANK CO., INC.
PLAINTIFF'S EXHIBIT
B
CLEVELAND, OHIO  44102-1799



# NEW HIRE PACKET



## NON-HARASSMENT POLICY SIGN-OFF
*(continued from previous page)*

confidential and only be provided to those who have a legitimate need for the information.   No employee will be subject to reprisal or retaliation for making a complaint of discrimination or harassment or for cooperating in an investigation of a complaint of discrimination or harassment.

**Harassment in any form will not be tolerated.   Harassment is considered an act of misconduct. Anyone engaging in sexual or other improper or unlawful harassment will be subject to disciplinary action, up to and including termination of employment.   As a term of your employment you will be required to sign the "Acknowledgment of Anti-Discrimination and Anti-Harassment Policy",** *below.*

## ACKNOWLEDGMENT OF ANTI-DISCRIMINATION
## AND ANTI-HARASSMENT POLICY

I HAVE RECEIVED, READ AND UNDERSTAND THE COMPANY'S ANTI-DISCRIMINATION AND ANTI-HARASSMENT POLICY AND AGREE TO FOLLOW ITS TERMS DURING MY EMPLOYMENT.   FURTHER, I UNDERSTAND THAT IF I VIOLATE THIS POLICY, I WILL BE SUBJECT TO DISCIPLINARY ACTION, UP TO AND INCLUDING TERMINATION OF EMPLOYMENT.

_____
(Signature)

George G. Vozary
(Print Name)

Date:     9-27-2010

Copyright 1998 by CC, Inc., Revised 2005, 2006, 2007                                                                    Last Revised: 3/1/10



# EMPLOYEE POLICY HANDBOOK



## EMPLOYEE ACKNOWLEDGMENT FORM

The Employee Handbook describes important information about our restaurant operations; Mise-en-Place, Inc. dba: Captain Tony's Downtown Pizza, Ketchup To Us, LLC dba: Tomahhdo-Tomahhdo Woodmere and Tomaydo-Tomahhdo Express (Downtown). Your Employer and I understand that I should consult my Store Supervisor regarding any questions not answered in The Employee Policy Handbook. I have entered into my employment relationship with Your Employer voluntarily and acknowledge that there is no specified length of employment. Accordingly, either Your Employer or I can terminate the relationship at will, with or without cause, at any time, so long as there is no violation of applicable federal or state law.

Since the information, policies, and benefits described here are necessarily subject to change, I acknowledge that revisions to The Handbook may occur, except to our policy of employment-at-will, and I understand that revised information may supersede, modify, or eliminate existing policies. Only the Managing Partner of Your Employer has the ability to adopt any revisions to the policies in this handbook.

Furthermore, I acknowledge that this handbook is neither a contract of employment nor a legally binding document. I have received The Handbook, and I understand that it is my responsibility to read and comply with the policies contained in this Handbook and any revisions made to it.

In addition I have read and understand the sexual harassment policy and understand completely what may constitute sexual harassment. I understand that any action that is considered sexual harassment may be grounds for immediate termination, and that Your Employer will not tolerate harassment in any form. I also understand that if I am not completely clear on what sexual harassment means that I can ask a Store Supervisor or Partner to clarify what actions may or may not be viewed as harassment.

_____   3·22·08
Employee Signature        Date

GEORGE G. VOZARY
Employee Name (printed)

_____   3.22.08
Supervisor Signature       Date

Rosemarie Carroll
Supervisor Name (printed)

(Retain a signed copy of the Employee Acknowledgment Form found in the New Hire Packet and place in employee's file. The original Employee Acknowledgment Form is to remain in the Employee Handbook for the employee's record.)

© 2000 CC INC       **PAGE 32**       REVISION DATE: 3.21.2008

CORPORATE FORMS



## UNIFORM AGREEMENT
## AND UNIFORM ISSUANCE ACKNOWLEDGMENT FORM

Our Uniform Policy:  As a condition of employment, all employees of Tomaydo Tomahhdo, LLC are required to wear uniforms.  For details on the uniform required for your particular position refer to the Employee Policy Handbook (EPH).  A newly hired employee will be provided 2 full uniforms for use during his/her term of employment.  When these issued uniforms become too worn, they may be exchanged for two new uniforms at no charge.  However, additional uniforms may also be purchased at the employee's cost.  For pricing, refer to the EPH for pricing.

, the undersigned employee, acknowledge receipt of the following items, on the date specified below, that are the property of Tomaydo Tomahhdo, LLC:

| UNIFORMS | | |
|---|---|---|
| (to be returned upon termination of employment) | | |
| Quantity | Size | Item |
| ( | ( | Hat(s) - Regular |
| | | Hat(s) - Visor |
| | | Polo Shirt(s) |
| 2 | XL | Chef Coat(s) - Short Sleeved |
| | | Chef Coat(s) - Long Sleeved |
| 2 | L | Chef Pant(s) |

In addition, I would like to purchase the following additional uniforms:

| ADDITIONAL PURCHASED UNIFORMS | | (these are yours to keep) |
|---|---|---|
| Quantity | Size | Item |
| | | Hat(s) - Regular |
| | | Hat(s) - Visor |
| | | Polo Shirt(s) |
| | | Chef Coat(s) - Short Sleeved |
| | | Chef Coat(s) - Long Sleeved |
| | | Chef Pant(s) |

, the undersigned, understand that the items listed in the chart labeled "loaned items" are on loan to me for use during my term of employment with Tomaydo Tomahhdo, LLC and remain the property of Tomaydo Tomahhdo, LLC while in my possession.  As such, I agree to return the above articles upon my termination from Tomaydo Tomahhdo, LLC.  Should I fail to return the uniforms loaned to me, I authorize any items not returned to be deducted from my final paycheck at current cost.

further understand that any uniforms requested above the initial two loaned to me must be purchased by myself.  I agree to pay for the items listed in the chart labeled "Additional Purchased Uniforms" within 7 business days of receiving said items, if I fail to pay within 7 days I authorize Tomaydo Tomahhdo, LLC to deduct the amount of the items purchased from the next paycheck immediately following the 7 day deadline for payment at current cost.

_____

Signature of Receipt

Saturday, March 22, 2008
Date

Copyright 1998, CC, Inc.

Revision date  4/16/2007